UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| PHOENIX SURGICALS, LLC, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | 3:10-cv-1643 (WWE) |
| | : | |
| BLACKSTONE MEDICAL, INC. d/b/a | : | |
| ORTHOFIX SPINAL IMPLANTS, | : | |
| Defendant. | : | |

## MEMORANDUM OF DECISION ON DEFENDANT'S MOTION TO DISMISS

Plaintiff Phoenix Surgicals, LLC has brought this action against defendant Blackstone Medical, Inc., d/b/a Orthofix Spinal Implants ("Orthofix"), alleging that Orthofix violated the Connecticut Franchise Act ("CFA") and the Connecticut Unfair Trade Practices Act ("CUTPA"). Now pending is defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(3) (Doc. #16). For the following reasons, the motion to dismiss will be granted.

The Court likely has jurisdiction over plaintiff's claims pursuant to 28 U.S.C. § 1332.

## BACKGROUND

For purposes of ruling on a motion to dismiss under Rule 12(b)(3), the Court accepts all allegations of the complaint as true and also reviews the parties' evidentiary submissions.

Plaintiff Phoenix is Connecticut limited liability company with a principal place of business in Connecticut. Defendant Orthofix is a Massachusetts corporation with a principal place of business in Texas.

1

Plaintiff Phoenix represents third parties in the sale of spinal implant and biologics-related products and supplies to its customers, which are primarily physicians and hospitals. At all relevant times, defendant Orthofix was in the business of manufacturing and supplying spinal biologics-related products and supplies.

In December 2008, Orthofix engaged Phoenix to represent it in Connecticut, five counties in New York, Massachusetts and Rhode Island. On March 6, 2009, the parties signed a sales representative agreement. Orthofix would not pay Phoenix without a signed agreement, although Phoenix had earned a substantial amount of commissions.

Pursuant to the agreement, Orthofix granted Phoenix the right to engage in the business of offering, selling or distributing Orthofix products under a marketing plan prescribed in substantial part by Orthofix. In addition, Phoenix's operations with respect to the Orthofix products were substantially associated with the Orthofix trademark, service mark, trade name, logo, advertising and other commercial symbols designating Phoenix as Orthofix's affiliate. Orthofix further controlled Phoenix's pricing, marketing, sale and distribution of Orthofix's products.

The agreement between the parties contained the following choice of law and forum selection provision:

> The validity, interpretation, performance and enforcement of this Agreement shall be governed by and interpreted in accordance with the laws of the State of Texas. All dispute which arise in connection with, or are related to this Agreement or any breach thereof, shall be resolved, if not settled, by litigation only in Collin County, Texas or Dallas County, Texas or the Federal Court otherwise having territorial jurisdiction over such counties and subject matter jurisdiction over the dispute, and not elsewhere. To this end, [Phoenix] waives any rights it may have to insist that litigation to which it is a party be had in any other venue other than above court, and covenants

> not to sue [Orthofix] in any court other than the above-referenced court. Should this provision be void pursuant to applicable State law, all other provisions in this Agreement shall remain in full force and effect and shall in no way be affected, impaired, or invalidated.

By letter dated August 26, 2010, Orthofix stated its immediate intent to terminate its relationship with Phoenix claiming that Phoenix had been soliciting the sales of products of Orthofix's competitors. Phoenix asserts that this allegation is false. Phoenix further alleges that prior to August 26, Orthofix had begun the process of engaging a representative for the sale of Orthofix's products in Phoenix's territory. Before and after August 26, Orthofix attempted to hire two of Phoenix's most productive sales representatives. Phoenix has complied with all of its obligations under the agreement.

## DISCUSSION

Defendant moves to dismiss this action due to lack of venue as provided by the forum selection clause in the parties' agreement. Determining whether to dismiss an action based on a forum selection clause requires a four-step analysis:

> The first inquiry is whether the clause was reasonably communicated to the party resisting enforcement. The second step requires us to classify the clause as mandatory or permissive, i.e., to decide whether the parties are required to bring any dispute to the designated forum or simply permitted to do so. Part three asks whether the claims and parties involved in the suit are subject to the forum selection clause.... The fourth, and final, step is to ascertain whether the resisting party has rebutted the presumption of enforceability by making a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching.

Phillips v. Audio Active, Ltd., 494 F.3d 378, 384 (2d Cir. 2007).

Defendant argues that the choice of forum provision in the parties' agreement means that this Court provides an improper venue for this action. Plaintiff contends that the CFA bars enforcement of the forum selection clause of the agreement. The CFA states that "any waiver of the rights of a franchisee under sections 42-133f or 42-133g which is contained in any franchise agreement entered into or amended on or after June 12, 1975, shall be void." Conn. Gen. Stat. § 42-133f(f). Relying on this provision, plaintiff argues that it renders the forum selection clause void.

A forum selection clause "made in an arm's-length negotiation by experienced and sophisticated businessmen, and absent some compelling and countervailing reason...[,] should be honored by the parties and enforced by the courts." M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 12 (1972). A state law prohibiting a forum selection clause is not dispositive of a motion to dismiss for improper venue. See Sherman St. Assocs., LLC v. JTH Tax, Inc., 2004 U.S. Dist. LEXIS 21102, *10-11 (D. Conn. Sept. 30, 2004). Rather, when a federal court sits in diversity, the validity of a forum selection clause is determined based on federal law, not state law. Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 32 (1988) ("We hold that federal law, specifically 28 U.S.C. § 1404(a), governs the District Court's decision whether to give effect to the parties' forum-selection clause and transfer this case to a court in Manhattan."); Phillips, 494 F.3d at 384 (observing that enforcement of a forum selection clause is procedural under the Erie doctrine).

In this case, the forum selection clause is mandatory. The language that "all disputes ... shall be resolved ... only in [Texas]" does not provide for venue before this Court. Further, the Court does not conclude that the forum selection clause is

4

unreasonable because the anti-waiver provision of the CFA arguably establishes the public policy of the state of Connecticut.  Rather, the Court finds that the policy does not control when, as here, this Court sits in diversity and applies federal procedural rules.  Plaintiff does not argue that its claims do not arise out of the contract and, therefore, are not covered by the forum selection clause.  See Phillips, 494 F.3d at 388-89.  Therefore, the Court finds that the forum selection applies to this action, and defendant's motion to dismiss for improper venue will be granted.

## CONCLUSION

For the foregoing reasons, the Court GRANTS defendant's motion to dismiss (Doc. #16).  The Clerk is instructed to close this case.

Dated at Bridgeport, Connecticut, this 17th day of November, 2010.

/s/
Warren W. Eginton
Senior United States District Judge